IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ULICES GUERRERO,

        Plaintiff,     OPINION and ORDER

  v.
                                              Case No.  19-cv-578-wmc

GREGORY O'NEIL,

---

*Pro se* plaintiff Ulices Guerrero is incarcerated at Stanley Correctional Institution ("Stanley"). Guerrero was granted leave to proceed under 42 U.S.C. § 1983 against Stanley Correctional Officer Gregory O'Neil, who allegedly conducted a pat search intending to harass or humiliate Guerrero in violation of his Eighth Amendment rights. Now before the court is O'Neil's motion for summary judgment. (Dkt. #22.)

As an initial matter, O'Neil argues that the court should grant his motion because Guerrero missed his opposition deadline multiple times. While Guerrero received numerous extensions and ultimately filed his opposition a day after his deadline, the court found the extensions were supported by good cause, and so, his opposition materials were actually just one day late, which the court will excuse. Moreover, reviewing the evidence on the merits in a light most favorable to Guerrero, factual disputes preclude entry of summary judgment in Guerrero's favor. Accordingly, the court must deny O'Neil's motion and this case will proceed to trial.

## UNDISPUTED FACTS[1]

On April 18, 2019, Guerrero was on the recreation field at Stanley, where O'Neil was working. Stanley's recreation field consists of a track that circles two baseball diamonds and four basketball courts. The field is split in half by a fence, so inmates on one side of the recreation field do not have access to inmates on the other side of the field unless they are allowed through the gate at either end of the fence. Among O'Neil's duties was to watch for inmates passing contraband, in particular drugs or weapons that could be used to harm staff or other inmates. O'Neil attests that it is common for inmates to pass contraband outside during recreation or while passing through the recreation field to another part of the institution. O'Neil also attests that inmates in different housing units can pass contraband to each other when they are on the same side of the fence, blending in with the crowd during recreation to avoid staff detection.

While O'Neil was supervising the inmates, he spotted Guerrero and another inmate greet each other on the track, and he saw something brown in color in Guerrero's hand. O'Neil was suspicious that Guerrero or the other inmate were passing contraband, so he approached Guerrero to ask for a pat search. Guerrero denies passing contraband with another inmate, attesting that he simply greeted the other inmate with a "fist bump."

While O'Neil attests that he was unable to identify the other inmate for a search because he walked away, Guerrero disputes this and even purports to identify the other inmate, who says that O'Neil saw him and could have searched him. Regardless, when O'Neil asked

---

[1] Unless otherwise indicated, the following facts are material and deemed undisputed when viewed in a light most favorable to plaintiff. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence as appropriate.

Guerrero what he passed to the other inmate, and Guerrero responded "nothing," O'Neil conducted a pat search on just Guerrero.

Perhaps most importantly, the parties dispute precisely how and where O'Neil touched Guerrero. O'Neil attests that he ran his hands around the collar of Guerrero's shirt, across his chest, down his armpits, his sides and his back. O'Neil then used what he describes as "a bladed hand" then hooked his thumb inside the elastic waistband of Guerrero's pants. O'Neil states that he then ran his thumb along the perimeter of Guerrero's waistband. Specifically, O'Neil describes pulling Guerrero's waistband outward so that any contraband in the waistband would fall to the ground. Finally, O'Neil says he patted down Guerrero's pant legs on either side. O'Neil attests that at no time during the search did he touch Guerrero's buttocks. (O'Neil Decl. (dkt. #25) ¶ 14.) However, Guerrero attests that O'Neil's "thumb went inside the crevice of" his buttocks, which caused him to jump in surprise. (Guerrero Decl. (dkt. #43) ¶ 5.)

It is undisputed that O'Neil did not find any contraband on Guerrero, nor did he see contraband on the ground or nearby. According to O'Neil, he thanked Guerrero for his cooperation and let him return to recreation. In contrast, Guerrero says that when he jumped in response to O'Neil touching the crevice of his buttocks, O'Neil waved him away and said in a mocking tone, "Andale, Andale."

O'Neil believes that the other inmate who left the area before he could identify him had the contraband that he saw in Guerrero's hand. However, Guerrero maintains that the other inmate was present throughout the search, and O'Neil simply chose not to search him, having singled out Guerrero for mistreatment. That inmate further attests that he was present for the entire interaction and O'Neil did not speak to him or search him. (*See* dkt. #44.)

3

A few days after the search, Guerrero called the Prison Rape Eliminate Act ("PREA") line to report his interaction with O'Neil. A non-defendant, Captain Lucas Challoner, then interviewed Guerrero using translation services. Guerrero expressed that he was unhappy with how O'Neil conducted the pat search on April 18, and that O'Neil's thumb made contact with the crevice of his buttocks. Guerrero also demonstrated what O'Neil did, showing that he wore his pants in a way that slightly exposed his buttocks when he lifted his shirt. Guerrero reported to Challoner that he always wore his pants that way, including when O'Neil searched him. Challoner concluded that because of the way that Guerrero wore his pants, contact with his buttocks would have been made when O'Neil was conducting the search of the waistline area, and that Guerrero's complaint did not meet the definition of sexual abuse or harassment. So, Challoner closed the investigation without further action.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Defendant seeks summary judgment on the merits of plaintiff's Eighth Amendment claims, as well as on qualified immunity grounds.

The Eighth Amendment prohibits searches "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir.

2003). Due to the institution's paramount interest in maintaining safety and security, officials have significant discretion as to when and what kind of search is appropriate. *Canedy v. Boardman*, 16 F.3d 183 (7th Cir. 1994). Thus, plaintiff's burden is to present evidence of "conduct that could constitute 'harassment unrelated to prison needs.'" *Courtney v. Devore*, 595 F. App'x 618, 619 (7th Cir. 2014) (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)).

Here, defendant argues that summary judgment is appropriate because there is no dispute that: (1) O'Neil had a legitimate penological reason to conduct the search; and (2) he did not conduct the strip search in a manner intended to harass Guerrero. In opposition, Guerrero denies possessing contraband and insists that O'Neil intended to humiliate him by touching his buttocks and mocking him. Even assuming for summary judgment purposes that O'Neil had a legitimate penological interest in searching Guerrero, there are disputes of fact as to how O'Neil carried out the pat search that preclude resolution of this case, at least on the record at summary judgment.

Specifically, Guerrero's version of the parties' interaction, which the court must accept as true at this stage, is that O'Neil (1) chose to search only Guerrero, even though the other inmate was present and available to be searched, (2) inserted his thumb into the crevice of his buttocks, and (3) mockingly said "Andale" when Guerrero jumped after being unexpectedly touched in the crevice of his buttocks. Guerrero does not say how long or how far O'Neil's thumb was inserted, but Guerrero's version of the events suggest that he was immediately uncomfortable, and when he expressed that discomfort, O'Neil mocked him.

"An unwanted touching of a person's' private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Washington v. Hively*, 695 F.3d 641, 643

(7th Cir. 2012) (citations omitted). Indeed, the Court of Appeals for the Seventh Circuit has reversed the grant of summary judgment in favor of an officer who allegedly put his thumb in a prisoners' buttocks during a pat search. *See Rivera v. Drake*, 497 F. App'x 635, 638 (7th Cir. 2012). In *Rivera*, the court noted that, in response to the plaintiff stating that the officer "pressed his thumb forcefully" between the plaintiff's buttocks during a pat search, the officer "articulated no legitimate justification for that conduct," and thus a jury could infer that the officer's actions were maliciously motivated. *Id.* at 637-38 (citing *Washington*, 695 F.3d 641; *Calhoun*, 319 F.3d at 940). In reply, O'Neil does not respond to Guerrero's sworn statement that he touched his buttocks, and he has not attested that the pat search policy can involve the insertion of a finger into the prisoner's buttocks. Rather, O'Neil's evidence that the pat search passes constitutional muster is: (1) his denial that he touched Guerrero's buttocks; and (2) Challoner's findings after Guerrero's PREA report. Of course, neither O'Neil's denial nor Challoner's administrative finding that O'Neil did not sexually harass Guerrero resolves the factual disputes as to: (1) whether O'Neil could have searched the other inmate; (2) whether O'Neil inserted his thumb into Guerrero's buttocks; or (3) whether O'Neil mocked Guerrero. If a jury were to believe Guerrero's version of each of those events, it could reasonably conclude that O'Neil intended to harass or humiliate Guerrero by singling him out for an inappropriate pat search and then mocking him.

O'Neil's qualified immunity argument fails due to those factual disputes as well. *See Taylor v. City of Milford*, 10 F.4th 800, 808 (7th Cir. 2021) (court should not grant summary judgment on qualified immunity grounds where "determining whether [defendant's] violation of [plaintiff's] rights was clearly established . . . requires findings of fact"). It was clearly established in 2019 that an officer may not conduct a pat-search in a manner intended to

6

humiliate or harass the prisoner, and if a jury were to believe Guerrero's version of the facts, it could reasonably conclude that O'Neil intended to harass Guerrero by singling him out for the pat search, touching his buttocks inappropriately, and mocking him. Accordingly, the court will deny O'Neil's motion for summary judgment. A jury will have to resolve those factual disputes and determine whether O'Neil carried out the pat search in a manner intended to humiliate or harass Guerrero. The court will set the trial schedule at the May 16, 2023, telephonic scheduling conference.

## ORDER

IT IS ORDERED that defendant's motion for summary judgment (dkt. #22) is DENIED.

Dated this 8th day of May, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge