IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ULICES GUERRERO,

                    Plaintiff,                                    OPINION AND ORDER

          v.

                                                                 19-cv-578-wmc
GREGORY O'NEIL,

                    Defendant.

---

Plaintiff Ulices Guerrero claims that Department of Corrections ("DOC") Officer Gregory O'Neil infringed on his Eighth Amendment rights by conducting a search intending to harass or humiliate him. The case is set for a jury trial beginning on June 15, 2026. In advance of the final pretrial conference ("FPTC") scheduled for June 2, 2026, at 2:30 p.m., this opinion and order addresses the parties' motions in limine ("MILs"). (Dkt. ##72, 73 and 77.)

BACKGROUND

At all relevant times, Guerrero has been an inmate housed at DOC's Stanley Correctional Institution ("SCI") and defendant O'Neil was working at SCI as a correctional officer.

On April 18, 2019, Guerrero was out on the recreation field at SCI when O'Neil reports observing Guerrero interacting with another inmate, Jermaine Shuttlesworth; becoming suspicious Guerrero was passing him contraband; and performing what he describes as a "pat search" on just Guerrero. That search did not yield any contraband. The parties dispute: how, where and why O'Neil touched Guerrero during this search; the ability of O'Neil to search Shuttlesworth; and what was said between the parties throughout the process.

A few days after the search, Guerrero called the Prison Rape Elimination Act ("PREA") line to report the incident. A non-defendant, Captain Lucas Challoner, interviewed Guerrero using translation services. During that interview, Guerrero expressed his frustration with O'Neil's conduct and demonstrated how the search was performed. Based on the interview and demonstration, Challoner concluded that Guerrero's complaint did not meet the definition of sexual abuse or harassment and closed the investigation without further action.

OPINION

A.  Plaintiff's Motions in Limine (dkt. ##72-73).

1.  MIL #1.

Plaintiff has moved for an order permitting him and his counsel to characterize the disputed conduct at issue with terms and phrases such as "sexual assault," "sexual abuse," "sexual misconduct," or "molestation" during opening statement, examination, and closing argument. Plaintiff also seeks to bar defendant from arguing that the case is "just a pat-search" dispute. To support his request to use terms such as sexual assault, plaintiff asserts that the Seventh Circuit has recognized: the conduct plaintiff alleges constitutes a sexual offense under the Eighth Amendment; the use of such terms is not a legal conclusion; the characterization is highly probative of intent; and any prejudice is minimal. In response, defendant objects to plaintiff's use of terms outside of closing arguments because allowing them during other phases would constitute conclusory (presumably legal) statements, invade the province of the jury, and be highly prejudicial to defendant.

The parties are confusing two, different issues: what language plaintiff's counsel, plaintiff and his witnesses may use based on what they believe evidence will show and their lay

understanding of these phrases; and what language defendant's counsel, defendant and his witnesses may use based on what they believe evidence will show and their lay understanding of these same phrases.  Neither side will be reaching a *legal* conclusion, as that is for the jury.

Plaintiff asserts that defendant's conduct *was* a sexual assault or molestation, which if his version of events is accepted by the jury would appear to be so.  *See Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant.") (citations omitted).  To the extent plaintiff's counsel decides to represent in opening what the evidence will show, he does so at his peril, but it is his risk to take, just as defendant's counsel may characterize the interaction as a standard "pat search" based upon what the evidence will show.  Similarly, the witnesses will testify to what *they* saw during the evidentiary stage of trial, characterizing it in language that the witness believes accurate as a matter of fact, not law.  Ultimately, counsel may argue in closing over and the jury will decide which version of the facts is more likely to be true.  Obviously, allowing either side to offer their *legal argument* as to what the evidence shows before closings would invade the province of the jury.

Therefore, plaintiff's motion to characterize the disputed conduct at issue using terms consistent with a good faith belief as to what the evidence will show is allowed, just as defendant may do the same if believing in good faith that the evidence will show just a pat search.  Accordingly, plaintiff's MIL #1 is GRANTED IN PART AND DENIED IN PART.

### 2.  MIL #2.

Plaintiff has moved to exclude any reference to the offense that resulted in plaintiff's conviction and later incarceration at SCI, including the nature of the conviction, the sentence,

and the underlying facts, but he does not object to the jury learning he has a felony conviction. In his response, defendant does not oppose plaintiff's motion and has proposed a single question to ask plaintiff regarding his conviction: "you have been convicted of one felony, correct?" Unless plaintiff denies this, no further questioning on that topic will be allowed. Accordingly, plaintiff's motion is GRANTED, and defendant may ask his proposed question.

### 3. MIL #3.

Plaintiff moves to bar reference to plaintiff's prison disciplinary history. Defendant does not oppose this motion. Accordingly, that motion is also GRANTED as unopposed.

### 4. MIL #4.

Plaintiff next moves to bar Challoner from testifying about his conclusions following his investigation into plaintiff's PREA complaint, arguing that: it is inadmissible lay opinion; he was not properly disclosed as an expert; he is not qualified to give the opinion; and a PREA finding is irrelevant to deliberate indifference under the Eighth Amendment.

To begin, Challoner was properly disclosed as an expert witness. Requirements for expert witness disclosure are set out in Rule 26(a)(2). Specifically, Rule 26(a)(2)(B) governs expert witnesses retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony and requires a written report with extensive disclosure requirements. In contrast, Rule 26(a)(2)(C) governs expert witnesses who were not specially employed to provide expert testimony in the case, nor whose duties as the party's employee regularly involve giving expert testimony. To properly disclose a Rule 26(a)(2)(C) expert, a party must provide a statement with "the subject matter

4

on which the witness is expected to present" and "a summary of the facts and opinions to which the witness is expected to testify."

Here, Challoner's disclosure requirements are subject to Rule 26(a)(2)(C) because: (1) his testimony will be based on knowledge he acquired during his participation in the events of this case -- specifically his handling of plaintiff's PREA complaint -- which was not prepared for litigation purposes; and (2) his duties do not regularly involve giving expert testimony. Additionally, defendant properly disclosed Challoner as a 26(a)(2)(C) expert by providing: (1) the subject matter on which he will testify, his "investigation into the incident at issue in this lawsuit and the DOC and SCI's internal policies and procedures related to inmate searches" (dkt. #20); and (2) a summary of the facts and opinions to which he will testify (dkt. #26).

As to the scope of Challoner's testimony, the Seventh Circuit has stated that "[w]hen an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is 'limited to describing sound professional standards and identifying departures from them.'" *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (quoting *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997). Here, Challoner intends to offer an opinion on whether defendant's represented conduct followed standard PREA training, which may be relevant to the jury's application of the legal standard underpinning this case if the jury accepts Challoner's understanding as to what the evidence will show -- namely, whether defendant intended to harass or humiliate plaintiff or to arouse or gratify the sexual desire of any person. Nonetheless, Challoner's testimony will be limited to describing the professional standards for conducting a proper inmate search and identifying how an officer might depart from them, as well as what *plaintiff* told and demonstrated *to him*. However, plaintiff's motion is GRANTED IN PART AND DENIED IN PART to the extent that Challoner may testify to professional

standards and procedure for searching inmates, but may *not* offer an opinion as to whether defendant's conduct amounted to a PREA or constitutional violation, nor may he disclose his role in reaching that conclusion as part of his PREA investigation in this case, any conclusions he ultimately reached, or any official role in questioning and accessing the credibility of plaintiff, all of which would invade the jury's role at trial.

### 5. MIL #5.

Plaintiff similarly moves to limit testimony from Challoner and Security Director Brian Moore regarding defendant's compliance with pat-search policy based on their personal knowledge. In opposition, defendant raises the same arguments for Challoner raised in their opposition to MIL #4, but does not object to limiting Moore's testimony to the "existence and content of DOC policy on pat searches; the difference between a 'waistband' search and a buttocks search; the proper 'bladed-hand' technique; the training all officers receive; and the prohibition on inserting a thumb into the crevice of the buttocks." Accordingly, plaintiff's motion is GRANTED IN PART AND DENIED IN PART regarding Challoner's testimony, consistent with this court ruling on plaintiff's motion in limine #4, and GRANTED with respect to Moore's testimony.

### 6. MIL #6.

Plaintiff moves to bar reference to the PLRA, attorney's fees, costs, pro bono representation, and taxpayer cost. Defendant does not oppose this motion. Accordingly, the motion is GRANTED as unopposed.

7.  **MIL #7.**

Plaintiff moves to bar golden rule and per diem arguments.  Defendant does not oppose this motion.  Accordingly, the motion is GRANTED as unopposed.

8.  **MIL #8.**

Plaintiff moves to bar any argument that force or physical injury are necessary elements to find an Eighth Amendment violation.  In his opposition, defendant does not argue that he should be permitted to make these arguments.  Instead, he argues that either a physical injury *or* a sexual act is required for plaintiff to recover any compensatory damages under the limitation imposed by the PLRA, 42 U.S.C. § 1997e(e), which states:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  Accordingly, plaintiff's motion is GRANTED.  Defendant may still argue that plaintiff did not suffer a physical injury *and* was not the victim of a sexual act, but he must not argue or represent that *both or either* are necessary to find an Eighth Amendment violation.

9.  **MIL #9.**

Plaintiff next moves the court for an order: (1) permitting plaintiff to introduce evidence of the existence, availability, and subsequent destruction of surveillance footage from the recreation area at SCI covering the April 18, 2019 incident; (2) instructing the jury, under Federal Rule of Civil Procedure 37(e)(1), that it may consider this destruction in deciding what weight to give the parties' testimony; and (3) in the alternative, simply permitting plaintiff to argue to the jury that DOC had cameras on the recreation area, the footage existed within

DOC's control, and the footage was destroyed before any party could review it. In contrast, in his MIL #6, defendant has moved to exclude *any* reference to alleged missing or unpreserved video footage, arguing that any failure to preserve the video is not relevant to defendant's conduct and that any probative value gained from acknowledging that a video did exist is outweighed by prejudice, confuses the issues, and wastes time.

Rule 37(e)(1) provides that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because *a party* failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: … upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." (Emphasis added.) Although plaintiff filed his PREA complaint just four days after the alleged incident, he has not shown that defendant failed to take reasonable steps to preserve the electronically stored information. Specifically, SCI has a policy that unless a request to preserve video is received within 120 days, it will not be preserved in its electronic storage system. Because plaintiff does not argue that this policy is unreasonable, nor that SCI failed to comply with its procedure, plaintiff is not entitled to any adverse instruction or relief under Rule 37(e)(1).

However, the bar that defendant seeks is too broad. Resolving what happened with video of the incident is relevant because a jury would likely suspect that a video would exist of conduct inside a prison, believe that it was reviewed by the parties or the prison officials appearing as witnesses, and wonder why it was withheld from their view. As a result, plaintiff may ask whether defendant's witnesses reviewed footage during their investigation. This would resolve likely questions a jury would have and help them assign the appropriate weight and credibility to give each witness. Additionally, defendant will be allowed to introduce evidence

8

explaining why the video footage was not preserved.  Accordingly, plaintiff's motion is DENIED IN PART AND GRANTED IN PART, and defendant's motion is DENIED.

### B.  Defendant's Motions in Limine (dkt. #77).

#### 1.  MIL #1.

Defendant moves to exclude evidence of other lawsuits and grievances against him and details from his personnel file, except for the investigation related to this case, arguing that they are barred by Federal Rules of Evidence 401 and 403.  Plaintiff largely does not oppose this motion, but argues that he should be allowed to introduce evidence regarding defendant's training, compliance with policy, and complaint history if defendant opens the door by introducing evidence that he was properly trained, complied with policy, and was not subject to previous complaints.  Plaintiff further contends that he should be able to use the PREA investigative records from this incident.  Because the investigative records are part of defendant's personnel file and relate to this case, they are not the subject of defendant's motion, which is GRANTED as unopposed.  Should defendant open the door to the issues plaintiff highlights, he may introduce evidence on cross examination.  However, plaintiff's counsel should discuss with the court outside the jury's hearing *before* attempting to introduce such evidence.

#### 2.  MIL #2.

Defendant moves to exclude references to the details of other lawsuits or investigations involving the DOC or its current or former employees.  Plaintiff does not object to this motion, but seeks clarification on whether he may ask defendant's witnesses questions about PREA procedures, the institutional context for staff-on-inmate sexual misconduct allegations at SCI,

and the training defendant received. Accordingly, defendant's motion is GRANTED as unopposed. Plaintiff may inquire about PREA procedures, and defendant's training, subject to this court's rulings on the parties' other MILs. However, the court will RESERVE as to the relevance of so-called "institutional context for staff-on-inmate sexual misconduct allegations" for discussion at the FPTC.

### 3. MIL #3.

Defendant moves to exclude reference to any alleged failure by the DOC or its current or former employees to investigate plaintiff's claims, arguing that it is not relevant because DOC's response to plaintiff's PREA complaint does not make defendant's actions more or less probable, and any probative value is outweighed by prejudice. In response, plaintiff argues that such evidence goes directly to the weight the jury should give Challoner's testimony, plaintiff's claim for damages, and forecloses issues he raised regarding the preservation of any video showing the incident. Plaintiff raises relevant concerns *if* defendant were allowed to rely on internal proceedings for the review of defendant's conduct. As to whether plaintiff should be allowed to introduce independently evidence about what these procedures entailed and what was reviewed to determine whether those procedures were followed, especially with regard to Challoner's testimony, is another concern. Accordingly, the court will RESERVE on defendant's MIL #3 for further discussion at the FPTC.

### 4. MIL #4.

Defendant has moved the court for an order allowing his counsel to ask plaintiff and any witnesses about their previous criminal convictions, proposing a single question to ask plaintiff and a single question to ask Shuttlesworth. Plaintiff does not oppose this motion to

the extent that defendant is limited to the two questions proposed in this motion.  Accordingly, defendant's motion is GRANTED IN PART, consistent with this court's order on plaintiff's MIL #2, and otherwise DENIED.

### 5.  MIL #5.

Defendant has moved to exclude questions about defendant's criminal background and traffic violations.  Plaintiff does not oppose this motion, with one reservation.  Plaintiff seeks to reserve the right to introduce evidence of defendant's employment history *if* defendant opens the door by representing that history differently from what the record shows.  Accordingly, the motion is GRANTED as unopposed, but should defendant open the door on the issues identified, plaintiff may introduce evidence of defendant's employment history on cross examination.  However, plaintiff's counsel should discuss this with the court at side-bar *before* attempting to introduce such evidence before the jury.

### 6.  MIL #6.

Defendant has moved to exclude any reference to missing or unpreserved video footage. The court previously addressed this motion in ruling on plaintiff's MIL #9.  Consistent with that ruling, defendant's motion is DENIED.

### 7.  MIL #7.

Defendant moves to bar any reference to who would pay for any judgment.  Plaintiff does not oppose this motion.  Accordingly, the motion is GRANTED as unopposed.

### 8.  MILs #8-10.

Defendant has moved to bar plaintiff from recovering compensatory damages because: (1) he did not suffer a physical injury; (2) did not allege a sexual act; (3) and any emotional

injuries after the search did not precede a physical injury.  In support, defendant relies on 42 U.S.C. § 1997e(e), which, as noted above in plaintiff's MIL #8, limits recovery of compensatory damages by prisoners absent a "prior showing of physical injury or the commission of a sexual act" as defined in 18 U.S.C. § 2246.

### a.  Physical injury

Plaintiff allegedly suffered a scrape that did not bleed and for which plaintiff did not seek treatment.  Defendant moves to bar recovery for emotional and mental injuries resulting from this scrape, which he argues is not a physical injury within the meaning of § 1997e(e).  In support of this argument, defendant relies on *Lord v. Beahm*, 952 F.3d 902 (7th Cir. 2020), holding that a plaintiff's "minor scratches, quickly and easily treated with a gauze bandage" as "trivial -- indeed, almost nonexistent."  *Id.* at 905.  Similarly, in addressing § 1997e(e)'s "physical injury" requirement, the Seventh Circuit has stated that "prisoners must show an injury that is more than negligible although not necessarily significant."  *Hacker v. Dart*, 62 F.4th 1073, 1079 (7th Cir. 2023); *see also Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (holding in the excessive-force context that a plaintiff can still prevail on an Eighth Amendment claim with no more than a *de minimis* injury, though "the relatively modest nature of the alleged injury will no doubt limit the damages he may recover").

Here, plaintiff intends to produce evidence that when defendant searched him "[defendant's] fingers were so deep that [plaintiff] almost bled because [plaintiff] had a scrape from [defendant's] nail" for which he did not seek treatment.  Even accepting his testimony as true, this injury is not sufficient to show a "physical injury" within the meaning of § 1997e(e).  Indeed, plaintiff concedes that his single scrape did not bleed or require treatment, and thus appears, if anything, even less severe than the injuries in *Lord*.

12

In his opposition, plaintiff argues that *Lord* is not an appropriate analogue, since:  (1) the underlying Eighth Amendment claims were for deliberate indifference to a serious risk of harm, not conducting a search intended to harass or humiliate; (2) its primary holding was that plaintiff's purported injuries were insufficient to support his Eighth Amendment claim, not that they were insufficient to support the requirements for mental and emotional injuries under § 1997e(e); and (3) the injuries in this case were not self-inflicted.  However, the relevant issue here is the *severity* of plaintiff's injury, and the court cannot ignore the analysis in *Lord* describing worse scratches as an "almost nonexistent" injury.  Accordingly, defendant's motion is GRANTED.

### b.  Sexual act

Plaintiff alleges that defendant also "placed [his thumb] inside [plaintiff's] buttocks," and has now testified during his deposition that defendant's finger was "in [his] -- what you would call in English [his] butt."  (Dkt. # 80, at 12; Guerrero Dep. 39:20-21.)  Defendant moves to bar recovery of mental and emotional injuries from this conduct, arguing that defendant's conduct was merely "sexual contact," rather than a "sexual act."  In support of this argument, defendant cites an isolated portion of plaintiff's deposition where he says that defendant's contact was on his butt crack.  Relevant here, 18 U.S.C. § 2246(2)(C) defines a "sexual act" as "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  Further, § 2246(3) defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

13

Based on the entire record, there is a material factual dispute regarding the extent of defendant's contact with plaintiff. Plaintiff has consistently represented that defendant put his fingers (or at least a finger) in his butt during the search. These representations plainly support an inference and conclusion that defendant penetrated plaintiff's anal opening. Defendant's focus on plaintiff's one-time use of the phrase "butt crack" may create a dispute, but that dispute must be resolved by a jury. Accordingly, defendant's motion is DENIED. However, defendant may raise the issue again at the close of plaintiff's case, should he fail to present sufficient evidence for a reasonable jury to find that defendant's conduct amounted to a "sexual act" as contemplated by § 1997e(e).

### c. Post-search emotions and physical manifestations

After defendant's search, plaintiff claims to have continued to suffer extreme emotional distress and mental anguish. Plaintiff further testified that this led to problems with "everything," including panic attacks, loss of sleep, and chest pain. (Dkt. # 80, at 30-31; Guerrero Dep. 113:12-116:23.) Defendant moves to bar recovery for this mental and emotional distress, arguing that it all occurred before any physical injury. In support of his contention that plaintiff may not recover for emotional and mental injuries that physically manifest after-the-fact, defendant relies on *Pearson v. Welborn*, 471 F.3d 732 (7th Cir. 2006). However, *Pearson* adopted no such categorical rule. Rather, in *Pearson,* the Seventh Circuit rejected a prisoner's attempt to claim a physical injury based on his testimony that he was "mentally and physically depressed" and "lost 50 pounds," characterizing that claim "unelaborated." *Id.* However, following *Pearson*, courts have denied summary judgment on this issue where the plaintiff presented evidence of physical manifestations, including this one. *See Sodemann v. Melnick,* No. 22-cv-374-wmc, 2025 WL 2689217, *12 (W.D. Wis. Sept. 19,

14

2025) (compensatory damages may still be available where defendant "caused extreme anxiety, panic attacks, and insomnia on a sustained basis, for which plaintiff sought medical attention"); *see also Peters v. Hendrickson*, No. 23-cv-232-wmc, 2025 WL 3641161, at *6 (W.D. Wis. Dec. 15, 2025) (noting that plaintiff testified "that he suffered nausea, vomiting, insomnia, and panic attacks, and sought treatment from a mental health professional due to [defendant's] harassment, the other defendants' inaction, and other inmate's verbal threats," which were "sufficient to allege more than a negligible physical injury at this stage").

Thus, where plaintiff has testified to physical manifestations of his mental and emotional distress, including panic attacks, loss of sleep, and chest pain, *and* sought treatment, a jury must decide whether compensatory damages are warranted. *See Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) ("Gray's summary judgment materials, we conclude, present triable issues of fact for a jury, which must determine the degree of both physical and psychological harm he suffered as a result of the [conditions of his confinement]. If the jury finds that Gray suffered only psychological harm, he will be limited to nominal and punitive damages."). Accordingly, defendant's motion is DENIED, although the court invites any additional, recent and relevant case law on the subject, and defendants may raise the issue again at the close of plaintiff's case should he fail to present sufficient proof that his emotional distress caused him to suffer physical harm.

### 9.  MIL #11.

Defendant has moved to bar plaintiff's claim that defendant's actions caused his depression, anxiety disorder, post-traumatic stress disorder, or any mental health disorder, arguing that a determination of causation, as well as any future or permanent harm, requires expert medical opinion testimony.  Plaintiff does not oppose this motion to the limited extent

15

that testimony for causation and future or permanent harm require expert medical testimony. However, as both parties concede, plaintiff may still testify regarding his subjective complaints of pain and symptoms, which can still be sufficient to prove emotional injury. Accordingly, defendant's motion is GRANTED IN PART, excluding testimony on causation and future injury, AND DENIED IN PART, allowing plaintiff to pursue a claim for emotional injury based on testimony from his own, subjective experience.

### 10. MIL #12.

Defendant moves to require a court-certified interpreter be present at trial. Plaintiff does not oppose this motion. Accordingly, the motion is GRANTED as unopposed, although defendant will need to make these arrangements.

### ORDER

IT IS ORDERED that plaintiff's and defendant's motions in limine are GRANTED, DENIED, and RESERVED in whole or in part as set forth above.

Entered this 29th day of May 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

16